IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-02-171 (1) |
| | § | C.A. No. C-05-108 |
| DAVID ARTHUR HINOJOSA | § | |
| | § | |
| Defendant-Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is David Arthur Hinojosa's ("Hinojosa's") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which was filed *pro se*. (D.E. 74).[1] Hinojosa subsequently retained counsel and has continued in these proceedings with the assistance of counsel.  Also before the Court is the government's response, which moves for the dismissal of Hinojosa's motion. (D.E. 86).  After the government's response and motion to dismiss was filed, Hinojosa, through retained counsel, requested leave to file a reply and to file additional recent case authority (D.E. 89, 91), both of which the Court granted. (D.E. 92 at 1).

The Court set the case for an evidentiary hearing as to one of his claims. (D.E. 92), and the hearing was held on January 24, 2006.  For the reasons set forth on the record at the conclusion of the hearing, and for the reasons set forth herein, the Court DENIES Hinojosa's motion.  Additionally, the Court DENIES Hinojosa a Certificate of Appealability.

Finally, Hinojosa has also requested leave to file a supplement to his § 2255 motion, so that he may include additional authority in support of one of his claims. (D.E. 96).  Although the motion

---

[1] Docket entry references are to the criminal case, CR. No. C-02-171.

indicates that the United States opposes it, the United States has not filed a response in opposition, and the deadline for doing so has passed. The motion to supplement (D.E. 96) is GRANTED, and the Court has considered the additional authority set forth in Hinojosa's supplement.

## I. JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 2255.

## II. MOVANT'S ALLEGATIONS

As noted in the order setting the evidentiary hearing, Hinojosa's initial motion lists three grounds for relief. (See D.E. 74 at 7-8). First, he claims that his trial counsel, William May, failed to advise him prior to trial that he could be sentenced under the Armed Career Criminal Act ("ACCA"). He avers that, had he known of the potential punishment, he would have pleaded guilty instead of proceeding to trial. It is this claim that prompted the evidentiary hearing.

Second, he argues that his appellate counsel was ineffective because he failed to raise an ineffective assistance of trial counsel claim.

Third, he argues that both trial and appellate counsel were ineffective in failing to object to the imposition of a sentence that he claims was greater than the maximum set for the crime for which he was indicted and convicted. Essentially, he is claiming that his enhanced sentence under the ACCA was unconstitutional, because the facts supporting it were not pleaded in the indictment or found by a jury beyond a reasonable doubt and because the ACCA statute was not referenced in his indictment. Through counsel, he elaborated on this third claim in his reply, explaining that he was relying on the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005) (D.E. 90 at pp. 8-11). In his supplement, he also relies on Justice Thomas' concurrence in Shepard v. United States, 125 S. Ct. 1254, 1264 (March 7, 2005), in which he states that five members of the Court have now

concluded that the prior conviction exception in Booker should be overruled.

As discussed in detail herein, he is not entitled to relief on any of his claims.

### III.  FACTUAL BACKGROUND AND PROCEEDINGS

The offense conduct and procedural history in Hinojosa's underlying criminal case are set forth in detail in the Court's order setting the evidentiary hearing. (D.E. 92). Familiarity with that order is assumed, and the Court will not repeat that background here. In sum, the Court ordered an evidentiary hearing to resolve whether his trial counsel, Mr. May, accurately informed him of his sentencing exposure prior to trial.

At the January 24, 2006 hearing, the Court heard testimony from both William May and from Hinojosa on the disputed issue.[2] Mr. May is an trial attorney with nearly three decades of experience in criminal law.  As the Court stated during the hearing, it was further the Court's opinion that Mr. May did an excellent job in representing Hinojosa at the suppression hearing, during trial, and at sentencing.

At the evidentiary hearing, Mr. May testified credibly and unequivocally that he told Hinojosa he faced a sentence of more than twenty years on more than one occasion prior to trial. Hinojosa's retained counsel at the evidentiary hearing pointed out that Mr. May's testimony appeared to conflict with both his testimony at sentencing and his affidavit, which Hinojosa had submitted in support of the § 2255 motion. As to Mr. May's representations at sentencing and his testimony at the evidentiary hearing, the Court finds no discrepancy between them. Although it was not entirely clear from the

---

[2] Linda Sorsby also testified, consistent with her earlier affidavit in this case, that Mr. Hinojosa had told her that, during a jailhouse visit from Attorney May, Mr. May had told him that he was only "looking at a 10 year maximum." (D.E. 74 at Exh. C ¶ 6).  She was unable to state when that visit occurred, however, and, whether a different statement had been made by Mr. May to Hinojosa at any point before trial. Thus, the Court finds her testimony on this point to be inconclusive.  In any event, what is pertinent is what transpired between Hinojosa and his attorney, and that is the evidence that the Court focuses on.

sentencing transcript, Mr. May explained at the hearing that when he had said at sentencing that he had told Hinojosa about the "general punishment" prior to trial, (See D.E. 66, S. Tr. at 35), what he meant was that he had told him he faced a sentence of over twenty years, but did not discuss with him the specifics of the sentence enhancement or the statutory guideline provisions that would cause that enormous sentence. (See also D.E. 66, S. Tr. at 34) ("We discussed that there was an enormous punishment that he was subject to, but we did not discuss the exact means by which the Government would get there, in terms of the enhancements."). The Court finds this explanation credible and also notes that its own recollection of the sentencing proceeding left it with the impression that Mr. May had informed Hinojosa prior to trial of the potential of a twenty-year or greater sentence.

The apparent discrepancy between Mr. May's affidavit and his testimony at the evidentiary hearing is more troubling. His affidavit states: "[B]ased on my personal belief that Mr. Hinojosa would not be found guilty by jury trial, I failed to advise him that he was subject to the Armed Career Criminal Act pursuant to 18 U.S.C., Section 922(g)(1) and 924(e)." (D.E. 74 at Exh. H). Mr. May testified at the hearing that he did not prepare this affidavit, but that it was presented to him by his secretary.[3] Because he thought it to be both "technically" correct and not inconsistent with his representations during sentencing, he signed it. Mr. May testified that he believed the affidavit to be "technically" correct because he did not advise Hinojosa prior to trial about any of the specifics of the likely enhancement, nor did he mention the ACCA or the specific statutory provisions allowing the enhancement to him. Of course, to the extent the affidavit suggests or implies that Mr. May did not inform Hinojosa of his true sentencing exposure, it is inaccurate at best and misleading, at worst.[4]

---

[3] Mr. May was not certain who had sent it to him, but Hinojosa testified that he prepared the affidavit himself and had it sent to Mr. May.

[4] Although the Court understands Mr. May's explanation of the testimony in his affidavit, the Court finds the affidavit, particularly when offered in support of Hinojosa's § 2255 motion, to be misleading. Furthermore,

Despite this discrepancy, the Court finds credible Mr. May's testimony at the hearing concerning what he told Mr. Hinojosa prior to trial. Viewing the record as a whole, Mr. May's testimony that he informed Hinojosa prior to trial that he could face a sentence of twenty years is consistent with what he said at sentencing, and clarifies that he told Mr. Hinojosa that he faced a possible sentence in excess of twenty years, but that he did not go into specifics concerning how that sentence would be calculated under the guidelines or how exactly the enhancement would be applied until after trial.

As noted by the Court at the conclusion of the hearing, the Court did not find Mr. Hinojosa's testimony at the hearing to be credible. For example, he testified at the hearing that he was not given a copy of the PSR to review prior to sentencing, testimony that directly contradicts his earlier testimony under oath.[5] Most importantly, the Court did not believe Hinojosa's testimony that he did not know of his true sentencing exposure prior to trial. In particular, Hinojosa insisted that, because the indictment itself did not mention the ACCA enhancement, he did not believe it could be applied and thought he only faced a ten-year maximum sentence. His purported reliance on the statutory reference in the indictment is simply not believable.

In sum, based on the record and the testimony at the hearing, the Court finds that Mr. May did accurately inform Hinojosa of his sentencing exposure prior to trial.

---

the Court cautions Mr. May in the future to be more careful in agreeing to sign affidavits he has not prepared. The Court expects Mr. May, just as it expects each and every attorney who appears before it, to refrain from signing or submitting any affidavit that, while "technically" correct, nonetheless has the potential to mislead the Court.

[5] At the October 30, 2002 hearing during which Hinojosa's sentencing was scheduled to begin but was continued, he testified that he had received a copy of the PSR, read it completely, discussed it completely with his attorneys, and that his attorneys had answered all of his questions. (D.E. 67, Transcript of October 30, 2002 hearing at 4).

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

**B.    Procedural Bar**

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings.  See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000).  A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice; or (2) that he is factually innocent of the crime charged.  Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

Hinojosa's claims are all claims of ineffective assistance of counsel.  Such claims are properly made for the first time in a § 2255 motion because they raise an issue of constitutional magnitude and generally cannot be raised on direct appeal.  United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002); United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992).    Thus, it will be

necessary to address the merits of his claims, which the Court does herein.

**C.     Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**1.     Failure of Counsel to Inform Him of True Sentencing Exposure**

Hinojosa's claim that he was denied ineffective assistance due to his counsel's failure to inform him of his true sentencing exposure fails because he cannot establish deficiency. As noted in the factual background section of this Order, the Court has found that his trial counsel, in fact, informed him of his true sentencing exposure prior to trial. Thus, Hinojosa cannot show that his counsel was deficient and this claim fails.

**2.     Failure of Appellate Counsel to Raise Ineffective Assistance Claim**

Hinojosa's claim that he was denied effective assistance of counsel on appeal due to his

appellate attorneys' failure to argue that his trial counsel was ineffective is similarly flawed. Even if he could establish deficiency, he cannot show prejudice as a result of the alleged failure. As an initial matter, had his attorneys raised such an issue on appeal, the Fifth Circuit most likely would not have addressed it. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002) (ineffective assistance claims cannot generally be raised on direct appeal due to an insufficient record); United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992).

Moreover, Hinojosa has now had the opportunity to raise the claim in his § 2255 proceedings, and was granted an evidentiary hearing on the matter. The Court has nonetheless concluded that he was not denied effective assistance of counsel. Thus, his claim is meritless, and there can be no prejudice from a failure to raise it. United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). This claim, too, fails.

### 3. Failure of Counsel to Raise Booker Claim

Hinojosa's third claim is that both his trial and appellate counsel were ineffective for failing to challenge the enhancement of his sentence under the ACCA. This claim is based on his belief that his sentencing violates the principles of Apprendi and Booker because his sentence was enhanced under the ACCA, but the facts supporting the enhancement (i.e., the fact and nature of his prior convictions) were not contained in the indictment, were not admitted by him, and were not found by a jury beyond a reasonable doubt.

This claim fails because he is unable to show prejudice as a result of any alleged deficiencies by counsel. That is, even if his attorneys had argued that the enhancement to his sentence under the

ACCA was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000),[6] he cannot show that the outcome of his sentencing or his appeal would have been different. Specifically, at the time of sentencing and appeal, clearly established Fifth Circuit precedent did not require the possibility of enhancement under the ACCA to be included in the indictment or found by a jury. United States v. Stone, 306 F.3d 241, 243 (5th Cir. 2002). The Fifth Circuit's clearly established law at the time of his conviction and appeal dictated that the principles of Apprendi were not violated by the enhancement. Thus, his attorneys were not deficient for failing to raise the argument, see Kimler, 167 F.3d at 893, and no prejudice arises, either.

Moreover, it is worth noting that, even if Hinojosa's case were addressed anew today, the result would be no different. See United States v. Brown, __ F.3d __, 2006 WL 151800, * 1 & n.1 (5th Cir. January 19, 2006) (reaffirming viability of Stone post-Booker). While it is true that the "prior conviction" exception set forth in Apprendi (and reaffirmed in Booker) has been called into doubt by some,[7] it currently remains good law. See United States v. Garza-Lopez, 410 F.3d 268, 276

---

[6] Moreover, at sentencing, his counsel did raise the issue. (D.E. 66, Sentencing Transcript at 32-33).

[7] Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998), was the genesis of the prior conviction exception to the rule of Apprendi. See Apprendi, 530 U.S. at 487-90 (calling Almendarez-Torres an "exceptional departure," but declining to revisit the issue and treating the case as a "narrow exception" to the general rule set forth in Apprendi). Justice Thomas, the key fifth vote in the Almendarez-Torres five-member majority, has recently suggested that the decision should be overturned:

> Apprendi and its progeny prohibit judges from "mak[ing] a finding that raises [a defendant's] sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant." United States v. Booker, 543 U.S. 220, ___, 125 S. Ct. 738, 775, 160 L.Ed.2d 621 (2005) (THOMAS, J., dissenting in part). Yet that is what the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2000 ed., Supp. II), permits in this case. ... [T]his Court has not yet reconsidered Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed 2d 350 (1998), which draws an exception to the Apprendi line of cases for judicial factfinding that concerns a defendant's prior convictions. See Apprendi, supra, at 487-490, 120 S. Ct. 2348. Almendarez-Torres ... has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that

9

(5th Cir.), cert. denied, 126 S. Ct. 298 (2005) (Almendarez-Torres remains binding); United States v. Izaguirre-Flores, 405 F.3d 270, 277-78 (5th Cir. 2005) (same).

For all of the foregoing reasons, Hinojosa's ineffective assistance claims fail.

### D.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Hinojosa has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate

---

> Almendarez-Torres was wrongly decided. See 523 U. S., at 248–249 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); Apprendi, supra, at 520–521 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability.

Shepard v. United States, 125 S. Ct. 1254, 1264 (2005)(THOMAS, J., concurring).

whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Hinojosa's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El, 123 S. Ct. at 1034 (citing Slack, 529 U.S. at 484).  Accordingly, Hinojosa is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the aforementioned reasons, Hinojosa's motion for leave to file a supplement (D.E. 96) is GRANTED and the supplement has been considered.  Hinojosa's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 74) is DENIED.  Additionally, Hinojosa is DENIED a Certificate of Appealability.

ORDERED this 31st day of January, 2006.

_____
Janis Graham Jack
United States District Judge